## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MEDICAL SUPPLY CHAIN, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 05-2299-CM** |
| **NEOFORMA, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On March 9, 2005, plaintiff Medical Supply Chain, Inc. filed the above-captioned case in the

United States District Court for the District of Western Missouri, case number 05-2010-CV-W-ODS.

Plaintiff brought suit against Neoforma, Inc., Robert J. Zollars, Volunteer Hospital Association ("VHA"),

Curt Nonomaque, University Healthsystem Consortium, Robert J. Baker, US Bancorp NA, U.S. Bank

National Association, Jerry A. Grundhofer, Andrew Cesare,[1] Piper Jaffray Companies, Andrew S. Duff,

Shughart Thomson & Kilroy, P.C.,[2] and Novation, LLC.  Plaintiff's 115 page complaint alleges sixteen

counts including claims for price restraint under the Sherman Act, restraint of trade and monopolization

under both federal and Missouri law, conspiracy, tortious interference with contract or business expectancy,

breach of contract, breach of fiduciary duty, fraud, prima facie tort, and claims under RICO and the USA

PATRIOT Act.

---

[1] Throughout the docket sheet, this defendant's last name was spelled numerous different ways.
The court will use "Cesare," the spelling most often used by plaintiff's counsel.

[2] Plaintiff's complaint names "Shughart Thomson & Kilroy Watkins Boulware, P.C." but the law
firm's correct name is "Shughart Thomson & Kilroy, P.C.".

On June 15, 2005, Judge Ortrie D. Smith of the Western District of Missouri granted defendants' Motions to Transfer the case to the District of Kansas, citing this district court's experience with "the almost identical previous lawsuit" and the interests of justice.  (Doc. 26, at 2).

Each group of defendants have filed a motion to dismiss, and two groups of defendants have filed renewed motions after the case was transferred, resulting in seven motions to dismiss.  The motions to dismiss pending before the court are defendant Robert Zollars' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 2); Defendant Neoforma, Inc.'s Motion to Dismiss, [sic] Complaint, or Alternatively to Require Amendment, Pursuant to F.R.C.P. Rules 8 and 9 (Doc. 4); Defendants US Bancorp, U.S. Bank National Association, Piper Jaffray Companies, Jerry A. Grundhofer, Andrew Cesare and Andrew S. Duffs' Motion to Transfer, Dismiss and/or Strike (Doc. 6); Defendants Curt Nonomaque and Robert Baker's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim (Doc. 11); Defendant Shughart Thomson & Kilroy, P.C.'s Motion to Transfer, Dismiss and/or Strike (Doc. 13); Defendants US Bancorp, U.S. Bank National Association, Piper Jaffray Companies, Jerry A. Grundhofer, Andrew Cesare and Andrew S. Duffs' Renewed Motion to Dismiss and/or Strike (Doc. 32); and Novation, LLC, VHA Inc., University Healthsystem Consortium, Robert Baker and Curt Nonomaque's Renewed Motion to Dismiss Complaint for Failure to State a Claim (Doc. 34).

Additional motions before the court are defendants US Bancorp, U.S. Bank National Association, Piper Jaffray Companies, Jerry A. Grundhofer, Andrew Cesare and Andrew S. Duffs' Motion for Sanctions (Doc. 22); Defendants' Motion to Stay Rule 26(f) Conference and Discovery (Doc. 24); plaintiff's Motion for Reconsideration of Order Transferring Venue (Doc. 28); Novation, LLC, VHA, University Healthsystem Consortium, Robert Baker and Curt Nonomaque's Motion for Sanctions (Doc. 36); plaintiff's

Motion to Strike Defendants' Renewed Motion to Dismiss and/or Strike (Doc. 38); plaintiff's Motion to Consolidate Under Rule 42 (Doc. 39); plaintiff's Motion to Require Consolidation Arguments to be in the Form of Pleadings on the Record and Notice of Threat of Unlawful Sanctions (Doc. 42); plaintiff's Motion to Strike Novation Defendants' Renewed Motion to Dismiss (Doc. 43); plaintiff's Motion for Clarification of Order in Case No. 03-2324 (Doc. 45); First Plaintiff's Motion for Partial Summary Judgment Under F. R. Civ. P. Local Rule 56.1 (Doc. 46); plaintiff's Motion for Leave to Join Additional Defendants Under Fed. R. Civ. P. 29(a) (Doc. 49); plaintiff's Motion to Substitute Plaintiff Under F.R.C.P. Rules [sic] 17(a), 15(a) and 25(a) (Doc. 56); plaintiff's Motion to Substitute Defendant Under F.R.C.P. Rules [sic] 17(a) (Doc. 57); and Novation, LLC, VHA Inc., University Healthsystem Consortium, Robert Baker and Curt Nonomaque's Motion to Set Oral Hearing on Motion to Dismiss (Doc. 76).

## I.    Background

### A.    Bret D. Landrith

Plaintiff's counsel for all of the pending motions before the court, Bret D. Landrith, withdrew as counsel for plaintiff on January 30, 2006 after being disbarred from the practice of law in the state of Kansas on December 9, 2005 for violating Kansas Rules of Professional Conduct relating to competence, meritorious claims, candor toward the tribunal, fairness to opposing parties and counsel, respect for rights of third persons, and misconduct. *See In re Landrith*, 124 P.3d 467, 485-86 (Kan. 2005). On February 7, 2006, Ira Dennis Hawver entered his appearance on behalf of Medical Supply Chain, Inc.

### B.    Prior Relevant Cases

Plaintiff has brought two other cases in this court that are relevant to the court's analysis. The first, captioned *Medical Supply Chain, Inc. v. US Bancorp, NA, et al*, case number 02-2539-CM ("Medical

Supply I"), was filed on October 22, 2002 against defendants US Bancorp, NA; US Bank Private Client Group, Corporate Trust, Institutional Trust and Custody, and Mutual Fund Services, LLC, a subsidiary of US Bancorp; Piper Jaffray; Andrew Cesare; Susan Paine; Lars Anderson; Brian Kabbes; and Unknown Healthcare Supplier.  Plaintiff contended these defendants engaged in conduct violating (1) the Sherman Antitrust Act; (2) the Clayton Antitrust Act; and (3) the Hobbs Act.  Plaintiff also alleged defendants (4) "fail[ed] to properly train [their] employees on the USA PATRIOT Act or to provide a compliance officer"; (5) misused "authority and excessive use of force as enforcement officers under the USA PATRIOT Act"; and (6) violated "criminal laws to influence policy under section 802 of the USA PATRIOT Act."  The complaint further charged defendants with (7) misappropriation of trade secrets under state law; (8) tortious interference with prospective contracts; (9) tortious interference with contracts; (10) breach of contract; (11) promissory estoppel; (12) fraudulent misrepresentation; and (13) violation of the covenant of good faith and fair dealing.  Plaintiff sought over $943 million in damages and declaratory relief.

On June 16, 2003, this court granted defendants' motions to dismiss for failure to state any claims upon which relief could be granted and dismissed the case.  *Medical Supply I*, 2003 WL 21479192, at *9 (D. Kan. June 16, 2003).  When discussing plaintiff's USA PATRIOT Act claims, the undersigned judge advised Mr. Landrith to "take greater care in ensuring that the claims he brings on his clients' behalf are supported by the law and the facts."  *Id.* at *6.  Furthermore, with regard to the same claims, the undersigned judge noted that "the court finds plaintiff's allegation so completely divorced from rational thought that the court will refrain from further comment until such time as federal criminal proceedings are commenced, if indeed they ever are."  *Id.* at *8.  On November 8, 2004, the Tenth Circuit affirmed the district court's dismissal, and ordered plaintiff to show cause why he should not be sanctioned for filing a

frivolous appeal pursuant to Fed. R. App. P. 38. *Medical Supply I*, 112 Fed. Appx. 730, 731-32 (10th

Cir. 2004).  On December 30, 2004, the undersigned judge assessed attorney fees and double costs as a

sanction against Mr. Landrith.  Defendants were awarded $23,956 in attorney fees. *Medical Supply I*,

2005 WL 2122675, at *1 (D. Kan. May 13, 2005).

      The second case brought by plaintiff in this court, captioned *Medical Supply Chain, Inc. v.*

*General Electric Company, et al.*, case number 03-2324-CM ("Medical Supply II"), was filed on June

18, 2003.  Defendants included General Electric Company, General Electric Capital Business Asset Funding

Corporation, GE Transportation Systems Global Signaling, LLC, and Jeffrey Immelt.  Plaintiff's amended

complaint alleged violations of the Sherman Act, the Robinson-Patman Act, and various state law claims.

Specifically, plaintiff alleged that it

> suffered antitrust injury from the defendants' breach of a written contract to buy
> out the remainder of a lease and provide financing for Medical Supply's entry
> into the hospital supply market.  This contract was a unique credit agreement
> and an essential facility required for entry into the e-commerce market for
> hospital supplies.

Plaintiff further alleged that "GE founded a cartel or trust with its horizontal and vertical competitors,

centered around an electronic marketplace that now has over 80% of the hospital e-commerce market," and

that "GE's refusal to deal and group boycott, preventing Medical Supply's entry into a market GE has

monopoly power in[,] is a violation of the Sherman and Clayton Antitrust Acts."

      On January 29, 2004, the undersigned judge granted defendants' motions to dismiss, but opted not

to impose Rule 11 sanctions against plaintiff. *Medical Supply II*, 2004 WL 956100, at *5 (D. Kan. Jan.

29, 2004).  In granting defendants' motions to dismiss, the court noted that "at the most fundamental level,

plaintiff's antitrust claims fail." *Id.* at *3.  On July 26, 2005, the Tenth Circuit affirmed the district court's

dismissal of plaintiff's complaint, but reversed and remanded on the issue of sanctions against plaintiff, finding that "at least [plaintiff's] claims against Jeffrey Immelt in his individual capacity were frivolous in that no allegation was made that Immelt had any personal connection with [plaintiff's] alleged injury or even that he knew [plaintiff] existed." *Medical Supply II*, 144 Fed. Appx. 708, 716 (10th Cir. 2005). The issue of sanctions remains pending.

## C.      Instant Allegations

Plaintiff asserts federal question subject matter jurisdiction based on several federal acts including the Clayton Act, the Sherman Act, the Declaratory Judgment Act,[3] the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the USA PATRIOT Act. Plaintiff also asserts diversity jurisdiction, despite acknowledging that both plaintiff and at least one defendant reside in Missouri. (Compl., at 4-6). Therefore, this court does not have diversity jurisdiction over plaintiff's case. 28 U.S.C. § 1332. Plaintiff alleges that this court has personal jurisdiction "over the parties who are in the territorial limits of the United States and who have sufficient contacts with the State of Missouri." (Compl., at 5).

In addition to the captioned defendants, plaintiff also lists eight "coconspirators not named as defendants in this action," several of which are relevant for purposes of this Order, including General Electric Company, General Electric Capital Business Asset Funding Corporation, GE Transportation Systems Global Signaling, LLC, and Jeffrey R. Immelt.

---

[3] Plaintiff asserts subject matter jurisdiction under the Declaratory Judgment Act, but did not assert any claims against any defendants under that act.

The court is unclear on the bulk of plaintiff's allegations.  On page 84 of its complaint, plaintiff lists its "summary of claims" as follows:[4]

423.  Medical Supply Chain, Inc., in its antitrust litigation opposing trade restraint in the electronic market for hospital supplies. Medical Supply has experienced substantial antitrust injury from the actions of Novation, a joint venture created by UHC and VHA, Inc. in support of the electronic marketplace entity Neoforma, Inc. which is believed to be an instrumentality of UHC and VHA, Inc. which were both in an alliance to eliminate competition among member competitors in a scheme to inflate prices similar to the alliance of Shell and Texaco to create two joint ventures, Equilon Enterprises LLC and Motiva Enterprises condemned for per se Sherman I prohibited conduct in *Dagher v Saudi Refining Inc*, 369 F.3d 1108, 1114 (9th Cir. 2004).

424. Medical Supply Chain, Inc. has been excluded from the hospital supply market with agreements between UHA and VHA's Novation in combination with their electronic marketplace Neoforma, Inc. US Bancorp NA, and The Piper Jaffray Companies exchanged directors with Novation and participated in exclusive agreements with Novation and Neoforma to keep hospitals using technology products from companies US Bancorp NA and Piper Jaffray had an interest in. The purpose of these agreements was to injure the hospital supply consumers with artificially inflated prices.

425. Because of these illegal anticompetitive agreements with Novation and Neoforma, Inc., Piper Jaffray and then US Bancorp refused to deal with Medical Supply Chain, Inc. US Bancorp broke a contract with Medical Supply Chain, Inc. to provide escrow accounts needed to capitalize Medical Supply's entry into the hospital supply marketplace, using the pretext of the USA PATRIOT Act. US Bancorp and Piper Jaffray simultaneously stole Medical Supply's intellectual property, which has since been openly used by Novation and Neoforma. US Bancorp and Piper Jaffray have continued to extort property from Medical Supply Chain on behalf of the hospital supply cartel by obstructing entry to the market for hospital supplies through the threat of malicious USA PATRIOT Act reports.

426. Medical Supply attempted to obtain preliminary injunctive relief against US Bancorp, The Piper Jaffray Companies and an Unknown Healthcare Supplier to

---

[4] For convenience and clarity, the court has copied plaintiff's summary of claims in its entirety, and did not designate any mistakes or typographical errors in the language.

prevent them from using the USA PATRIOT Act as a sham petition designed to prevent Medical Supply from entering the market and to stop the theft of its intellectual property.  To date, Medical Supply has not been successful.

427. In June of 2004, Novation/ Neoforma, Inc. again stopped Medical Supply from entering the market for hospital supplies using exclusive dealing agreements with General Electric and GE's electronic marketplace cartel GHX, LLC. These agreements caused GE to break a written contract to purchase a commercial real estate lease from Medical Supply.  The contract included Medical Supply's requirement to use the proceeds to capitalize Medical Supply's entry to market since it was under the extortion of US Bancorp threatened and malicious USA PATRIOT Act reporting. Medical Supply is currently attempting to resolve its contract with GE and obtain injunctive relief and treble damages under Sherman I and II.

428. On December 14, 2004 Medical Supply served notice on UHC, Robert J. Baker, VHA, Inc., Curt Nonomaque, Novation LLC, Neoforma, Inc. and Robert J. Zollars that Medical Supply had not succeeded in obtaining prospective injunctive relief against the US Bancorp and Piper Jaffray defendants to prevent antitrust injuries from being obstructed from entering the market for hospital supplies or the theft of Medical Supply's intellectual property. The notice informed the UHC, Robert J. Baker, VHA, Inc., Curt Nonomaque, Novation LLC, Neoforma, Inc. and Robert J. Zollars that if they did not provide a substantiated response denying their responsibility for the hospital supply cartel's actions against Medical Supply, they would be held jointly and severally liable:

> "If you dispute that any of these actions were taken against Medical Supply, or that your company is liable as an antitrust coconspirator, please promptly provide a substantiated basis for Medical Supply's reliance on the same to me at the address provided below.  Since your company has not refuted the publicized events and relationships described herein, a constructive use of the time remaining between now and our anticipated filing of February 1, 2005 might be to reach an agreement on the platform and electronic format the millions of recorded transactions, hospital supply contracts, kickbacks and equity shares that will be exchanged through discovery as we collectively document the injuries to America's hospitals and our company from your concerted refusals to deal and group boycotts."

429. Only counsel for Neoforma responded and the purpose of the communication was to have Medical Supply await their answer till after the holidays, an answer that never came.

430. The coconspirators UHC, Robert J. Baker, VHA, Inc., Curt Nonomaque, Novation LLC, Neoforma, Inc. and Robert J. Zollars did however renew their conscious commitment to a common scheme designed to achieve an unlawful objective of keeping Medical Supply out of the market for hospital supplies by reviewing the case against US Bancorp and consulting with representatives for US Bancorp, US Bank, Jerry A. Grundhoffer, Andrew Cesere, Piper Jaffray Companies and Andrew S. Duff. The cartel decided to rely on the continuing efforts to illegally influence the Kansas District Court and Tenth Circuit Court of Appeals to uphold the trial court's erroneous ruling. The cartel also renewed their efforts to have Medical Supply's sole counsel disbarred, knowing that an extensive search for counsel by Medical Supply had resulted in 100% of the contacted firms being conflicted out of opposing US Bancorp and actually effected a frenzy of disbarment attempts against Medical Supply's counsel in the period from December 14, 2004 to February 3rd, 2005, all originating from the cartel's agents Shughart Thomson and Kilroy's past and current share holders.

(Compl., at 84-86).

Plaintiff seeks "approximately $1,500,000,000.00 for the conduct related to the refusal to provide trust accounts and . . . approximately $1,500,000,000.00 for the conduct related to preventing Medical Supply from selling the office building lease to General Electric Transportation Co." (Compl., at 114). Plaintiff also seeks $1 million for damages sustained as a "consequence of Defendants' tortuous [sic] interference with contract or business expectancy and/or in prima facie tort . . . together with punitive or exemplary damages for the same, in an amount in excess of $10,000," "approximately" $1.5 million in damages for defendants' violations of "civil racketeering laws," $500,000 for damages plaintiff sustained as a result of defendants' USA PATRIOT Act violations, and costs and reasonable attorney fees. (Compl., at 114-15).

## II.    Legal Standard for Motions to Dismiss

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff, *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984).

**III.     Analysis**

**A.     Plaintiff's Motion for Reconsideration of Order Transferring Venue (Doc. 28)**

Whether to grant or deny a motion for reconsideration is committed to the court's discretion. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1386 (10th Cir. 1998); *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988). In exercising that discretion, courts in general have recognized three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *See Marx v. Schnuck Mkts., Inc.*, 869 F. Supp. 895, 897 (D. Kan. 1994) (citations omitted); D. Kan. Rule 7.3 (listing three bases for reconsideration of order). "A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider." *Sithon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504, 505 (D. Kan. 1998). Plaintiff's arguments in support of

reconsideration do not assert a change in controlling law or the availability of new evidence.  Moreover, in arguing that the U.S. District Court for the Western District of Missouri committed clear error by transferring the instant case to this district, plaintiff did not raise any arguments that it could not have raised in its motions opposing transfer.  Because plaintiff is not entitled to a second chance at presenting its strongest case, *Sithon Maritime Co.*, 177 F.R.D. at 505, plaintiff's motion for reconsideration is denied.

**B.     Plaintiff's Motions to Strike (Docs. 38 and 43)**

Plaintiff requests that the court strike two renewed motions to dismiss.  The bulk of plaintiff's arguments simply respond to defendants' motions to dismiss rather than argue in support of striking the motions.  Plaintiff's on-point argument is that the renewed motions to dismiss include new arguments and authorities that were available when defendants filed their original motions to dismiss.

The court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The court finds that defendants' renewed motions do not fall within the purview of Rule 12(f).  Rather, defendants renewed their motions only after the instant case was transferred from the U.S. District Court for the Western District of Missouri (in the 8th Circuit) to this court (in the 10th Circuit).  Moreover, the court finds that striking the motions is inconsequential; even if the court struck the motions at issue,  none of its instant rulings would change.  Plaintiff's motions to strike are denied.

**C.     Motions to Dismiss**

-11-

Pending before the court are five motions to dismiss and two renewed motions to dismiss. Defendants assert several different arguments in support of dismissal, including that this court does not have personal jurisdiction over certain defendants, plaintiff did not properly serve certain defendants, all of plaintiff's claims fail to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), several of plaintiff's claims are barred by claim and/or issue preclusion, and plaintiff's complaint violates Federal Rules of Civil Procedure 8 and 9.  In addition, several defendants contend that some of plaintiff's allegations against specific defendants and third parties are so immaterial, impertinent and scandalous that they should be stricken by the court.

The court has reviewed the pending motions to dismiss and responses, along with the complaint and plaintiff's prior cases in this district.  Even presuming all well-pleaded allegations as true, resolving doubts in favor of plaintiff, and viewing the pleadings in the light most favorable to plaintiff, the court finds that dismissal of plaintiff's complaint is warranted for several reasons.[5]

## 1.      Rule 12(b)(6)

Plaintiff's complaint fails at the most basic level to allege sufficient facts to support cognizable legal claims.  Federal Rule of Civil Procedure 12(b)(6) allows the court to dismiss a cause of action for "failure to state a claim upon which relief can be granted."  The court recognizes that "[d]ismissal under Rule 12(b)(6) is a 'harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'"  *Morse v. Regents of Univ. of Colo.*, 154 F.3d 1124, 1127 (10th Cir. 1998) (quoting *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d

___

[5] Although the court limited its analysis to Rule 12(b)(6), claim preclusion and Rule 8, the court does not intend to imply that defendants' additional grounds for dismissal are without merit.  Rather, three separate grounds for dismissal are sufficient, and the court declines to continue its analysis.

-12-

1357, 1359 (10th Cir. 1989)).  However, even considering the harshness of this remedy, dismissal under

12(b)(6) is warranted in this case.

a.        **Sherman Act, § 1 (Counts I and II)**

A plaintiff must plead three elements to state a claim under § 1 of the Sherman Act: (1) a contract,

combination, or conspiracy among two or more independent actors; (2) that unreasonably restrains trade;

and (3) is in, or substantially affects, interstate commerce.  15 U.S.C. § 1; *TV Commc'ns Network, Inc. v.*

*Turner Network Television, Inc.*, 964 F.2d 1022, 1027 (10th Cir. 1992); 1 Irving Scher, et al., *Antitrust*

*Adviser* (4th ed. 2001) § 1.04.  Accepting the allegations contained in the complaint as true, the court finds

that plaintiff has failed to allege a contract, combination, or conspiracy among two or more independent

actors.  Plaintiff's complaint alleges numerous conspiracies and agreements between various defendants.

For example, plaintiff alleges that "Defendants entered into a combinations [sic] and or conspiracies in

unreasonable restraint of trade or commerce . . . in the markets for hospital supplies, hospital supplies sold in

e-commerce and the capitalization of healthcare technology and supply chain management companies."

(Compl., at 87).  Although plaintiff asserts many conspiracy theories, it does not allege any facts that support

its allegations.  *See TV Commc'ns Network, Inc.*, 964 F.2d at 1024 ("Although the modern pleading

requirements are quite liberal, a plaintiff must do more than cite relevant antitrust language to state a claim for

relief.") (citing *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1387 (10th Cir. 1980));

*Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1373 (10th Cir. 1979) (holding that to

survive a motion to dismiss, a complaint stating violations of the Sherman Act "must allege facts sufficient, if

they are proven, to allow the court to conclude that claimant has a legal right to relief") (citation omitted); *see*

*also Medical Supply II*, 2004 WL 956100, at *3 (dismissing plaintiff's antitrust claims for, inter alia, failure

to allege that the named defendants were parties to an unlawful agreement"), *rev'd on other grounds*, 144 Fed. Appx. 708 (10th Cir. 2005)); *Medical Supply I*, 2003 WL 21479192, at *3 (D. Kan. June 16, 2003), *aff'd*, 112 Fed. Appx. 730 (10th Cir. 2004) ("Accepting the allegations contained in the complaint as true, the court finds plaintiff has failed to allege a contract, combination, or conspiracy among two or more independent actors, and thus has not stated a claim under § 1."). Counts I and II fail to state a claim upon which relief can be granted.

**b.      Sherman Act, § 2 (Counts III and IV)**

Section 2 of the Sherman Act prohibits monopolies in interstate trade or commerce. 15 U.S.C. § 2 ("Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . shall be deemed guilty of a felony."). Conduct violates this section when an entity acquires or maintains monopoly power in such a way as to preclude other entities from engaging in fair competition. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 389-90 (1956); *Instructional Sys. Dev. Corp. v. Aetna Cas. & Sur. Co.*, 817 F.2d 639, 649 (10th Cir. 1987). "The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). In the Tenth Circuit, "monopoly power is defined as the ability both to control prices and exclude competition." *Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1567 (10th Cir. 1991). Further, "determination of the existence of monopoly power requires proof of relevant product and geographic markets." *Id.*

Plaintiff's relevant allegations regarding § 2 of the Sherman Act specifically consists of the following paragraph:

> Defendants collectively have at all times material to this complaint maintained, attempted to achieve and maintain, or combined or conspired to achieve and maintain, a monopoly over the sale of hospital supplies, the sale of hospital supplies in e-commerce, and over the capitalization of healthcare technology companies and supply chain management companies in the several Stated [sic] of the United States; and have used, attempted to use, or combined and conspired to use, their monopoly power to affect competition in the sale of hospital supplies, the sale of hospital supplies in e-commerce, and over the capitalization of healthcare technology companies and supply chain management companies sale [sic] of the same in the several States of the United States in violation of 15 U.S.C. § 2.

(Compl., at 96).

Thus, even accepting each of plaintiff's allegations as true, plaintiff has clearly failed to allege (1) defendants' possession of monopoly power, (2) a relevant product and geographic market, or (3) that defendants either controlled prices and excluded competition. *See Medical Supply II*, 144 Fed. Appx. at 713 (affirming the district court's holding on plaintiff's Sherman Act, § 2 claim, and stating that "we see no reason to disturb the district court's conclusion that [plaintiff] failed to state a claim that GE had illegally monopolized or attempted to monopolize the North American hospital supply e-commerce market"); *Medical Supply I*, 2003 WL 21479192, at *3 ("Here, plaintiff has failed to allege that defendants both controlled prices and excluded competition. Further, plaintiff has not pled the existence of a relevant product market or geographic market. Plaintiff has not stated that defendants' alleged market power stems from defendants' willful acquisition or maintenance of that power rather than from defendants' development "of a superior product, business acumen, or historic accident."). The court finds that Counts III and IV fail to state a claim of monopoly under § 2.

c.      **Clayton Act (Count V)**

A provision of the Clayton Act, 15 U.S.C. § 19, prohibits persons from serving, at the same time, as a director or officer of any two corporations that are engaged in commerce and are competitors, "so that the elimination of competition by agreement between them would constitute a violation of any of the antitrust laws." 15 U.S.C. § 19(a)(1).  Plaintiff's complaint, however, fails to allege who the alleged interlocking directors are, for which defendants' companies they serve, or that the corporations in question are actual competitors.  For these reasons, plaintiff's Count V is dismissed for failure to state a claim.

d.      **RICO (Count XV)**

To plead a viable civil RICO claim under 18 U.S.C. § 1962(c), plaintiff must allege that a defendant "'(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Abbott v. Chem. Trust*, 2001 WL 492388, at *15 (D. Kan. Apr. 26, 2001) (quoting *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999)).  Plaintiff also alleges that defendants conspired to violate 18 U.S.C. § 1962(c).  *See* 18 U.S.C. § 1962(d).  Under Rule 9(b), plaintiff must allege with particularity not only each element of a RICO violation, but also the predicate acts of racketeering.  *Phillips USA, Inc. v. Allflex USA, Inc.*, 1993 WL 191615, at *2 (D. Kan. May 21, 1993) (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992)).  To properly allege the predicate acts, plaintiff must specify the "who, what, where, and when" of each purported act.  *Id.* (citation omitted).

-16-

Here, plaintiff failed to sufficiently allege the "who, what, where, and when" its RICO claim. Plaintiff's specific RICO allegations consists of the following: "The Defendants engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," as well as numerous assertions that defendant Shughart Thomson & Kilroy, a law firm based in Kansas City, Missouri, violated RICO by conspiring with other unspecified defendants to shut plaintiff out of the healthcare supply industry.  Again, plaintiff offers no specific facts in support of its numerous allegations.  Thus, plaintiff's RICO claim fails to state a claim for which relief may be granted.

Plaintiff also cites to 18 U.S.C. §§ 1503 and 1513 in its RICO discussion.  Section 1503 prohibits influencing, intimidating, impeding or injuring a juror or officer of the court, 18 U.S.C. § 1503(a), while § 1513 prohibits retaliation against a witness for attending or testifying in an official proceeding, or for providing information relating to the commission of a federal offense to a law enforcement officer, 18 U.S.C. § 1513(a)(1).  Plaintiff seems to argue that defendant Shughart Thomson & Kilroy violated these statutes when it lodged ethics complaints against Mr. Landrith.  Plaintiff's allegations have nothing to do with unlawfully influencing a juror or officer of the court, or retaliating against a witness or informant.  Therefore, these allegations fail to state a claim.

Also as part of its RICO claim, plaintiff alleges that defendants violated 17 U.S.C. § 506 when it "stole copyrighted works to keep Medical Supply from realizing its plan to enter the market for hospital suppliers . . . that included business plans, algorithms, confidential proprietary business models, customer and associate lists from Medical Supply Chain, Inc. in 2002 and from its predecessor company Medical Supply Management in 1995 and 1996." (Compl., at 110).  This is the entirety of detail plaintiff gives regarding its criminal copyright claim.  Thus, plaintiff does not allege exactly what material was stole by

whom, how the allegedly stolen material fits the definition of copyrighted material, or how the material was stolen.

Plaintiff also alleges that defendants violated 18 U.S.C. § 2319.   However, because plaintiff makes absolutely no allegations regarding this statute other than to state that "Defendants [sic] violation falls under 18 USC § 2319," this claim fails to state a valid claim.

As part of its RICO claims, plaintiff also alleges that defendants violated the Hobbs Act "by preventing Medical Supply's entry into commerce under color of official right," citing to 18 U.S.C. § 1951. Section 1951 prohibits the obstruction, delay or affection of commerce by robbery or extortion. Significantly, extortion is defined as the "wrongful use of actual or threatened force, violence, or fear, under color of official right."  18 U.S.C. § 1951(b)(2).  Here, there is no allegation that defendants, who are private parties, acted under color of official right, or acted with any force, violence or fear.  Therefore, plaintiff's claim under the Hobbs Act fails to state a claim.

**e.       USA PATRIOT Act (Count XVI)**

Plaintiff alleges that all defendants, through defendants US Bancorp NA and U.S. Bank National Association, violated two sections of the USA PATRIOT Act, 31 U.S.C. § 5318(g)(3) and 18 U.S.C. § 1030, by "maliciously" filing a suspicious activity report regarding plaintiff and its founder Samuel Lipari.  No private cause of action exists to enforce the USA PATRIOT Act.  *Medical Supply I*, 112 Fed. Appx. at 731.  Therefore, plaintiff's USA PATRIOT Act claims are dismissed.

**f.       State Law Claims**

Federal district courts have supplemental jurisdiction over state law claims that are part of the "same case or controversy" as federal claims.  28 U.S.C. § 1367(a).  "[W]hen a district court dismisses the federal

claims, leaving only the supplemental state claims, the most common response has been to dismiss the state claim or claims without prejudice." *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (quotation marks, alterations, and citation omitted).  Having dismissed each of plaintiff's federal claims, this court finds no compelling reason to retain jurisdiction over the state law claims and dismisses them without prejudice.

**2.      Issue/Claim Preclusion**

Several defendants argue that issue and/or claim preclusion bar several of plaintiff's claims.  Claim and issue preclusion are rules of "fundamental and substantial justice that enforce[] the public policy that there be an *end* to litigation."  *May v. Parker-Abbott Transfer & Storage, Inc.*, 899 F.2d 1007, 1009 (10th Cir. 1990) (internal citation and quotation omitted).  Claim and issue preclusion serve to "avoid[] unnecessary expense and vexation for parties, conserve[] judicial resources, and encourage[] reliance on judicial action."  *Id.*

Under the doctrine of issue preclusion, "'[w]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"  *Botefuhr*, 309 F.3d at 1282 (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)).

> Four elements must be demonstrated in order to trigger issue preclusion: "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action."

*Id.* at 1282 (quotations omitted).

On the other hand, "claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (citations omitted). "If these requirements are met, [claim preclusion] is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit. *Id.* (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999)).

Here, at least five of plaintiff's claims against three defendants are barred by claim preclusion. In *Medical Supply I*, plaintiff brought suit against three of the same defendants as the instant case: US Bancorp NA, Piper Jaffray, and Andrew Cesare. This court reached final judgment on the merits of each of plaintiff's claims in *US Bancorp* by dismissing each claim for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6). *See Medical Supply I*, 2003 WL 21479192. Moreover, the Tenth Circuit affirmed this court's dismissal. *See Medical Supply I*, 112 Fed. Appx. (10th Cir. 2004). The identical claims include Sherman Act § 1 claims, 15 U.S.C. § 1 (Counts I and II of the instant action), Sherman Act § 2 claims, 15 U.S.C. § 2 (Counts III and III), the Hobbs Act claims, 18 U.S.C. § 1951(b)(2) (Count XV), the USA PATRIOT Act claims, 31 U.S.C. § 5318 (Count XVI), as well as several state claims. Finding that each of these claims (1) ended in a judgment on the merits in a prior case, (2) involved the many of the same defendants and (3) involved the same causes of action, the court finds that claim preclusion bars plaintiff's claims as to the identical defendants.[6]

---

[6] The court is confident that several of plaintiff's instant claims, to the extend that the court understands them, are also precluded by issue preclusion. However, because the court has several other grounds on which to base dismissal of plaintiff's claims, the court opts to not wade through the details of plaintiff's claims looking for previously-litigated issues.

**3.        Rule 8**

Plaintiff's complaint, as a whole, violates Federal Rules of Civil Procedure Rule 8(a) and 8(e)(1).

Rule 8(a) states: "A pleading . . . shall contain . . a short and plain statement of the claim showing that the

pleader is entitled to relief."  Rule 8(e)(1) elaborates on the short and plain requirement in requiring each

averment to be "simple, concise, and direct."  Plaintiff's 115 page, 613 paragraph complaint falls miles from

Rule 8's boundaries.  Pages seven through fifty of plaintiff's complaint are organized under the heading of

"The Relative Markets" and consist of a multitude of unsupported, unauthenticated commentary about the

healthcare industry in the United States.  These "facts" include quotes from President George W. Bush, U.S.

Senate Committee hearing testimony, quotations from newspaper articles and study findings.  Also included

is wholly irrelevant information such as paragraph eighty-eight, which seeks to educate the court about the

number of deaths in 2003 resulting from the lack of affordable health insurance, as well as unsubstantiated

and very weighty allegations, such as that "defendants in combinations and or conspiracies with hospital

suppliers, distributors and manufacturers caused hospitals to be overcharged $30,000,000,000.00 (thirty

billion dollars) in 2002." (Compl., at 11).  Pages fifty to eighty-four comprise  a section entitled "Events,"

which includes some background of this case and others, allegations regarding defendants and other third

persons, caselaw, newspaper article quotations, and discussion about disciplinary complaints lodged against

Mr. Landrith, to name a few.  The "Claims for Relief" section starts on page eighty-six, and continues in the

same style.  For instance, the discussion of plaintiff's first count spans eleven pages, excluding the fact that

plaintiff begins each count by realleging all previous paragraphs.  In sum, plaintiff's complaint is so

exceptionally verbose and cryptic that dismissal is appropriate.

Although the short and plain requirement of Rule 8 is a low burden, several courts have dismissed complaints like plaintiff's. *See United States el rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378-79 (7th Cir. 2003) (affirming dismissal of plaintiff's 155 page, 400 paragraph complaint, holding that "[l]ength may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter") (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702-03 (3d Cir. 1996) (240 pages, 600 paragraphs); *Kuehl v. FDIC*, 8 F.3d 905, 908-09 (1st Cir. 1993) (43 pages, 358 paragraphs), *Michaelis v. Neb. State Bar Assoc.*, 717 F.2d 437, 439 (8th Cir. 1983) (98 pages, 144 paragraphs)).

The court is unwilling to allow plaintiff to amend its complaint for three reasons.  First, for reasons explained more fully below, the court believes amendment would be futile.  Second, before requesting sanctions against plaintiff, two groups of defendants gave plaintiff at least twenty-one days notice pursuant to Federal Rule of Civil Procedure 11(c)(1)(A).  After receiving such notice, plaintiff chose not to withdraw or amend its complaint.  Therefore, any additional opportunity is not necessary.  Third, the author of the complaint is plaintiff's original counsel, Mr. Landrith.  Mr. Hawver recently entered his appearance on behalf of plaintiff, but has chosen not to amend the complaint in this case.  Thus, Mr. Hawver has chosen to step into the shoes of Mr. Landrith and adopt the complaint as his own.

**D.    Defendants' Requests for Sanctions (Docs. 22 and 36)**

Two groups of defendants filed two separate motions for sanctions against plaintiff and plaintiff's counsel.  Defendants argue that sanctions are warranted pursuant to Federal Civil Procedure Rule 11 and 28 U.S.C. § 1927 in light of plaintiff's decision to disregard previous admonitions from this court and the

-22-

Tenth Circuit.  Defendants also contend that plaintiff and its counsel filed the instant lawsuit unnecessarily to harass and annoy defendants with frivolous and costly litigation.

Federal Rule of Civil Procedure 11(b) states that by filing a pleading, an attorney is certifying that the information contained in the motion,

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Violation of these requirements will result in sanctions imposed by the court.  Fed. R. Civ. P. 11(c); *see Griffen v. City of Okla. City*, 3 F.3d 336, 342 (10th Cir. 1993) ("Rule 11 requires the district court to impose sanctions if a document is signed in violation of the Rule.").  The standard for Rule 11 sanctions is an objective one.  *See White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990) ("A good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances.").  Likewise, subjective bad faith is not required to trigger Rule 11 sanctions.  *Burkhart ex rel. Meeks v. Kinsley Bank*, 804 F.2d 588, 589 (10th Cir. 1986).

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses,

and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927. Sanctions may be

imposed under § 1927 "for conduct that, viewed objectively, manifests either intentional or reckless

disregard of the attorney's duties to the court." *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir.

1987).  Like Rule 11, the court must apply an objective standard, and subjective bad faith is not a necessary

showing for application of § 1927 sanctions.  Because § 1927 is penal in nature, an award should only be

made "'in instances evidencing a serious and standard disregard for the orderly process of justice'" and the

court must be aware of the "need to ensure that the statute does not dampen attorneys' zealous

representation of their clients' interests." *Ford Audio Video Sys., Inc. v. AMX Corp., Inc.*, 1998 WL

658386, at *3 (10th Cir. Sept. 15, 1998) (quoting *Dreiling v. Peugeot Motors of Am., Inc.*, 768 F.2d

1159, 1165 (10th Cir. 1985) (internal quotations omitted)).

The court notes that, pursuant to Rule 11(c)(1)(A), both groups of defendants requesting sanctions

gave plaintiff at least twenty-one days notice before filing their motions for sanctions.  "The basic

requirements of due process with respect to the assessment of costs, expenses, or attorney's fees are notice

that such sanctions are being considered by the court and a subsequent opportunity to respond." *Braley*, at

1514.  Plaintiff responded to defendants' motions by arguing that claim and issue preclusion do not bar

plaintiff's claims, and that defendants violated Rule 11 and § 1927 by requesting sanctions.  Plaintiff chose

not to withdraw or amend its complaint.

The court finds that sanctions against plaintiff in the form of attorney fees and costs are appropriate

and necessary pursuant to both Rule 11 and § 1927 for four reasons.  First, the mere fact that plaintiff filed a

nearly unintelligible 115 page complaint, which the court already found violates Rule 8, suggests that

plaintiff's complaint, and the instant suit as a whole, was brought for the purpose of harassing defendants or

-24-

the court, causing unnecessary delay and/or needlessly increasing the cost of litigation in violation of Rule 11(b)(1).  Second, as discussed above, not one of plaintiff's federal claims supports a viable claim for which relief can be granted pursuant to Rule 12(b)(6).  As such, plaintiff's complaint consists of frivolous claims in violation of Federal Rule of Civil Procedure 11(b)(2).  Moreover, each of plaintiff's federal claims lack the evidentiary support needed to avoid violating Rule 11(b)(3).  Third, plaintiff's insistence on re-litigating claims barred by claim preclusion "unreasonably and vexatiously" "multiplies the proceedings" in violation of § 1927.

Fourth, and most importantly, plaintiff failed to heed the court's previous admonitions and sanctions, choosing instead to proceed with the instant suit and attempt another bite at the proverbial apple.  Plaintiff's previous two claims in this court were dismissed for failure to state a claim pursuant to Rule 12(b)(6).  *Medical Supply I*, 2003 WL 21479192, at *9; *Medical Supply II*, 2004 WL 956100, at *5.  In *Medical Supply I*, the undersigned judge advised plaintiff's counsel to "take greater care in ensuring that the claims he brings on his clients' behalf are supported by the law and the facts."  *Id.* at *6.  In the same Order, the undersigned judged found plaintiff's allegations "completely divorced from rational thought."  *Id.* at *8.  In *Medical Supply II*, the undersigned judge noted that  "at the most fundamental level, plaintiff's antitrust claims fail."  2004 WL 956100, at *3.

Both prior dismissals were affirmed by the Tenth Circuit.  *Medical Supply I*, 112 Fed. Appx. at 731-32; *Medical Supply II*, 144 Fed. Appx. at 716.  In *Medical Supply I*, the Tenth Circuit ordered plaintiff to show cause why sanctions should not be imposed.  112 Fed. Appx. at 731-32.  The undersigned judge imposed attorney fees totaling $23,956 and double costs as a sanction against Mr. Landrith.  *Medical*

*Supply I*, 2005 WL 2122675, at *1.  In *Medical Supply II*, the Tenth Circuit reversed and remanded on

the issue of sanctions against plaintiff, and the issue of sanctions remains pending.  144 Fed. Appx. at 716

Plaintiff and its counsel have had plenty of warning about filing frivolous claims from both this court

and the Tenth Circuit.  But plaintiff persisted, filing a third lawsuit against many of the same defendants and

alleging many of the same claims.  Enough is enough.  *See Brooks v. Couchman*, 2006 WL 137415, at *1

(10th Cir. Jan. 19, 2006) (affirming the district court's dismissal of plaintiff's third attempt at the same

argument, stating that "we have expended valuable court resources on at least two occasions dealing with

[plaintiff] and his various meritless theories.  We repeat our sentiment . . . : 'We will spend no more judicial

time or resources addressing his frivolous claims.'" (internal citation omitted)); *Sweeney v. Resolution Trust

Corp.*, 16 F.3d 1, 6-7 (1st Cir. 1994) (finding that the district court did not abuse its discretion in imposing

sanctions on plaintiffs for filing a third and "repetitive" motion to remand when the court had previously

denied two "almost identical motions and made detailed findings of fact").

The court may impose sanctions against plaintiff, plaintiff's counsel, or against both with joint and

several liability.  *White*, 908 F.2d at 685-86.  However, "the sanctioning of a party requires specific findings

that the party was aware of the wrongdoing."  *Id.* at 685 (citations omitted); *Barrett v. Tallon*, 30 F.3d

1296, 1303 (10th Cir. 1993) ("Thus, in the case of a frivolously pleaded RICO claim, it seems that the court

should sanction the responsible attorneys rather than the plaintiffs, unless it finds that the plaintiffs insisted,

against the advice of counsel, that the RICO claim be asserted, or that the plaintiffs had a sufficient

understanding of the nature, elements, and limitations of the attempted RICO claim to independently evaluate

its applicability to the alleged facts.").

Certainly plaintiff's former counsel, Bret D. Landrith, is culpable.  Mr. Landrith was the attorney of record when each of the sanctionable motions were filed, and Mr. Landrith signed and authored the complaint and each of the motions before the court.  Nonetheless, sanctions against plaintiff are also appropriate for two reasons.  First, plaintiff's CEO and sole shareholder, Samuel Lipari, takes responsibility for the decisions to knowingly bring the instant lawsuit after the result of plaintiff's previous attempts at litigation.  For instance, Mr. Lipari's affidavit, entitled "Affidavit of Sam Lipari on The Unsuitability of Transfer," states:

> I chose to bring this new action in Missouri District court because I have a responsibility to Medical Supply's stakeholders . . . to adjudicate these claims. I brought two earlier and related actions to Kansas District court based on the advice of my counsel. I have witnessed first hand that no decision or outcome in either case including from the Tenth Circuit Court of Appeals had any relationship to the pleadings of my company or applicable law.  I make this determination based on my considerable personal experience as a clerk and researcher for a Missouri legal firm and upon discussion with what I believe are the foremost healthcare antitrust authorities in our nation.

(Doc. 30, exh. 1).  Mr. Lipari's affidavit continues with a litany of conspiracy theories involving defendants, this court, and other government agencies and employees.  Significantly, however, Mr. Lipari's affidavit also discusses numerous instances when he actively participated in prior and current litigation.  Mr. Lipari's affidavit also discusses attending one of Mr. Landrith's disciplinary conferences.  Thus, Mr. Lipari was well-aware of the legal arguments and allegations being brought by his attorney, as well as the disciplinary allegations against Mr. Landrith prior to his disbarment.  Even so, plaintiff chose to continue vigorously litigating the instant case.  Second, after Mr. Landrith was disbarred, plaintiff chose to retain new counsel and continue litigating this case.  Therefore, sanctioning plaintiff as well as Mr. Landrith serves to deter both from future frivolous filings.

In sum, the court finds that defendants' reasonable attorney fees and costs against plaintiff and Mr. Landrith jointly and severally is the minimum amount of sanctions necessary to "adequately deter the undesirable behavior." *White v. Gen. Motors*, 977 F.2d 499, 502 (10th Cir. 1992) (internal quotations and citations omitted).

**E.      Plaintiff's Motion for Clarification of Order in Case No. 03-2324 (Doc. 45)**

Plaintiff's motion for clarification seems to request this court to clarify its ruling in a separate case, case number 03-2324, which found that plaintiff's request to consolidate case number 03-2324 with the instant case is moot.  Case number 03-2324 was closed as of February 13, 2004, with attorney fees the only remaining issue.  The court need not address this motion for two reasons.  First, plaintiff has previously requested the court to "clarify" its decision in case number 03-2324, and the court found plaintiff's request moot in light of the posture of the case.  Second, plaintiff's instant case will soon be closed, as the instant Memorandum and Order's holdings dismiss plaintiff's entire complaint.  Therefore, the issue of whether to consolidate two closed cases is a moot one.

**IT IS THEREFORE ORDERED** that defendant Robert Zollars' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 2); Defendant Neoforma, Inc.'s Motion to Dismiss, [sic] Complaint, or Alternatively to Require Amendment, Pursuant to F.R.C.P. Rules 8 and 9 (Doc. 4); Defendants US Bancorp, U.S. Bank National Association, Piper Jaffray Companies, Jerry A. Grundhofer, Andrew Cesare and Andrew S. Duffs' Motion to Transfer, Dismiss and/or Strike (Doc. 6); Defendants Curt Nonomaque and Robert Baker's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim (Doc. 11); Defendant Shughart Thomson & Kilroy, P.C.'s Motion to Transfer, Dismiss and/or Strike (Doc. 13); Defendants US Bancorp, U.S. Bank National Association, Piper Jaffray

-28-

Companies, Jerry A. Grundhofer, Andrew Cesare and Andrew S. Duffs' Renewed Motion to Dismiss and/or Strike (Doc. 32); and Novation, LLC, VHA Inc., University Healthsystem Consortium, Robert Baker and Curt Nonomaque's Renewed Motion to Dismiss Complaint for Failure to State a Claim (Doc. 34) are granted. Plaintiff's case is hereby dismissed.

**IT IS FURTHER ORDERED** that defendants US Bancorp, U.S. Bank National Association, Piper Jaffray Companies, Jerry A. Grundhofer, Andrew Cesare and Andrew S. Duffs' Motion for Sanctions (Doc. 22), and Novation, LLC, VHA Inc., University Healthsystem Consortium, Robert Baker and Curt Nonomaque's Motion for Sanctions (Doc. 36) are granted. Plaintiff and Mr. Bret D. Landrith are hereby jointly and severally sanctioned in the amount of defendants' reasonable attorney fees and costs. **Defendants shall submit an accounting of their attorney fees and costs within twenty (20) days of this Memorandum and Order.**

**IT IS FURTHER ORDERED** that plaintiff's Motion for Reconsideration of Order Transferring Venue (Doc. 28); plaintiff's Motion to Strike Defendants' Renewed Motion to Dismiss and/or Strike (Doc. 38); plaintiff's Motion to Strike Novation Defendants' Renewed Motion to Dismiss (Doc. 43); and plaintiff's Motion for Clarification of Order in Case No. 03-2324 (Doc. 45) are denied.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Rule 26(f) Conference and Discovery (Doc. 24); plaintiff's Motion to Consolidate Under Rule 42 (Doc. 39); plaintiff's Motion to Require Consolidation Arguments to be in the Form of Pleadings on the Record and Notice of Threat of Unlawful Sanctions (Doc. 42); First Plaintiff's Motion for Partial Summary Judgment Under F. R. Civ. P. Local Rule 56.1 (Doc. 46); plaintiff's Motion for Leave to Join Additional Defendants Under Fed. R. Civ. P. 29(a) (Doc. 49); plaintiff's Motion to Substitute Plaintiff Under F.R.C.P. Rules [sic] 17(a), 15(a) and

25(a) (Doc. 56); plaintiff's Motion to Substitute Defendant Under F.R.C.P. Rules [sic] 17(a) (Doc. 57);

and Novation, LLC, VHA Inc., University Healthsystem Consortium, Robert Baker and Curt

Nonomaque's Motion to Set Oral Hearing on Motion to Dismiss (Doc. 76) are denied as moot.

      **SO ORDERED.**

      Dated this 7th day of March 2006, at Kansas City, Kansas.

                  s/ Carlos Murguia
                  **CARLOS MURGUIA**
                  **United States District Judge**